## MOULTON v. RICHARDSON, & a.

In a suit in equity against Richardson, a large stockholder in a corporation, and against the corporation itself, a temporary injunction was granted to restrain Richardson from removing the machinery and other personal property of the corporation out of the state, and to restrain both defendants from selling the real estate of the corporation in this state where the business was carried on,—and afterwards the injunction was modified so as to allow the machinery and personal property to be removed from the state, upon furnishing a sufficient bond with condition to pay the plaintiff such sum as the court upon the final decision of the bill in equity might award.

Upon a final decree against Richardson for the payment of a large sum of money, it was held the sum to be paid by the obligors in the bond was not the full amount necessarily of the decree against Richardson but the amount of damages occasioned to the plaintiff by such removal of the machinery and other personal property, and that this amount should be ascertained and fixed by the decree.

THIS is a bill in equity, brought by James Derby against Josiah B. Richardson and the New England Steam and Gas Pipe Co., and the substance of the bill and answer sufficiently appears in the opinion of the court. The plaintiff having died pending the writ, it is now prosecuted by his administrator, William P. Moulton.

*W. W. Stickney*, for plaintiff.

*A. R. Hatch*, for defendants.

BELLOWS, C. J. The bill states that the plaintiff and defendant being each owners of some stock in the New England Steam and Gas Pipe Company, a corporation having its place of manufacturing in Exeter and its place of sales in Boston, entered into an agreement to purchase on their joint account so much stock of said corporation as should be wanted for the purpose of controlling the same, the agreement being in writing and made February 3, 1853, and that under this agreement said Richardson with the aid and means of the plaintiff, purchased a large number of shares of said stock taking the certificates in his own name : and that plaintiff also purchased a few shares of said stock taking the certificates in the name of said Richardson and delivering the same to him, and in this way said Richardson became possessed of two hundred and sixty-two shares of said stock all of which has become of a value more than double the par value thereof representing the whole number of shares to be three hundred and twenty, and the par value to be one hundred dollars per share. That by means of the stock of said company so purchased, as aforesaid, and amounting in the aggregate to a majority of the shares of the entire capital stock, the said Richardson acquir-

ed complete control of the company, and directed its operations at his individual will and that he still holds a majority of the shares of that stock.   That Richardson has no property within this state except his interest in the capital stock of said company.  That on March 15th, 1854, the plaintiff demanded of said Richardson an account of the shares so purchased by him, and a conveyance of one half of the same to the plaintiff.   But that said Richardson combining and confederating with said company and with others, absolutely refused so to do, and the said Richardson threatens and designs to cause forthwith to be removed and taken away from the State of New Hampshire the machinery, manufacturing stock, and all other property of the said company with the purpose of erecting the machinery and carrying on the business of said company at some place without this state, and by the aid of officers of the company to cause to be sold, alienated and conveyed the land of said company, situated at or in Exeter.

The bill prays that the said Richardson may come to a fair and just account, and that by injunction he be restrained with his agents and servants from transferring, encumbering, or in any way dealing with any of the shares of said stock so purchased, and from causing to be removed or taken out of this state any of the machinery, manufactured stock, materials, or other property of said company, and from causing to be sold, alienated or conveyed any of the lands of said company in said Exeter, and from in any way assisting therein, and that said company may in like manner be restrained and enjoined from making any sale or conveyance of said lands or any part thereof and for general relief.   And the bill prays for process against said Richardson and the company.

The bill was filed January 14, 1858, and on the next day the plaintiff applied to Judge Bell for a temporary injunction against both Richardson and the company which was granted on the same day in accordance with the prayer of the bill.

It is very clear that no case is made in the bill for a decree against this corporation requiring it to pay money or transfer stock to the plaintiff, but the corporation is made a party apparently for the purpose of obtaining an injunction to prevent the removal of the personal property and the sale of the real property of the company.

The intent of the plaintiff in preventing this removal and sale is not very fully stated.   The substance of plaintiff's allegations on that point is that the plaintiff is entitled in equity to recover of Richardson a large amount of the stock of this company, or compensation for it in money.   That Richardson in fact owns a majority of the stock and controls the corporation that he has no other property in this state, but his interest in this stock, and that he combining with the corporation threatens and designs to remove the personal property from the state, and to sell the real property, and to carry on the business out of the state.   It is not stated that the plaintiff had acquired any specific lien upon the stock, or the property of this corporation but enough is stated to show that the plaintiff had an

interest in preventing the depreciation of the stock, or the removal of the property and business beyond the limits of the state. Upon this ground, probably, an injunction was sought, and the corporation made a party for that purpose and we think the injunction must be regarded as properly granted, although the character of the injury apprehended from the removal of the personal property, and the sale of the real estate is not formally set forth, but is left to inference and argument.

By the injunction, Richardson was restrained from transferring the stock so obtained by him, and from removing out of the state the machinery and other property of the corporation, or from causing the lands in Exeter of the corporation to be sold or conveyed; while the corporation was enjoined not to sell or convey the same lands or any part thereof. It will be perceived that in respect to the personal property, the injunction does not reach the corporation, except so far as it restrains Richardson, who is alleged to control its action; and certainly in respect to Richardson, no question can be made as to the rightfulness and propriety of the injunction.

On the 25th day of January, 1858, upon the application of Richardson and the corporation, the injunction was modified so as to allow the defendants to remove this personal property or any part of it out of the state, upon filing with the clerk a bond with sufficient sureties, residents in this state, in a penal sum equal to the appraised value of said property, with a condition to pay said Derby such sum as the Supreme Judicial Court, upon the final decision of the bill in equity, may award. Thereupon, personal property of the corporation was appraised to the amount of $9,572.75, and a bond given January 29, 1858, by the corporation as principal, and Albert Blaisdell and James M. Lovering as sureties, to the said Derby, in the penal sum of $9,572.75, with the condition that if the obligors pay to him such sum as the said court upon the final decision of the bill in equity may award, the bond was to be void. March 25, 1859, the said Richardson filed his answer denying the equity of the plaintiff's bill, admitting, however, the making of the agreement of February 3, 1853, but alleging that in consequence of Derby's inability to furnish any means or credit to aid in buying stock, the agreement was entirely abandoned and never acted upon at all; that the stock purchased by said Richardson was purchased on his own account and with his own means; that he never did acquire a major part of the stock, and not exceeding one hundred and fifty shares; and that he has no purpose or design to remove the personal property out of the state, except so far as he may be lawfully authorized or requested to do so by vote of the corporation, and denies any purpose of the corporation, or any of its stockholders, to erect the machinery or carry on the business at any place out of the state.

The several answers of the corporation were filed April 5, 1859, and it sets forth sundry transactions between it and the plaintiff bearing upon the claims of the plaintiff against Derby; and denies that Richardson was the owner of a majority of the stock, or more

than one hundred and fifty-four shares, as appears upon the books, until after the corporation increased the number of its shares. That it does not know that Richardson has other property in New Hampshire but his interest in the corporation, but says he has considerable property and is able to pay all his debts; but denies that the corporation is answerable for any sums of money said Richardson may owe the plaintiff, and denies that Richardson threatens to remove any property of the corporation from the state to sell the same for the purpose of erecting machinery or to carry on the business out of the state, or that he has power to do so; but admits that the corporation being crippled by loss by fire, it is proposed by the stockholders to sell the property to pay the debts of the corporation. Upon the proofs taken in the cause, the bill was sustained, and a decree made at December term, 1868, that the plaintiff recover of the said Richardson the sum of $20,481.23 and costs; but as between the plaintiff and the corporation, no costs to be allowed. And it was further provided that for the purpose of giving the plaintiff an adequate remedy on the bond that this is the sum awarded by the court upon the final decision of the suit in equity.

The application now is by the corporation and its sureties in this bond, to modify the decree by striking out this last provision.

The question then is, as to the construction to be given to the order of Judge Bell modifying the injunction, and of the bond given in conformity to it. This order required security to pay to said Derby such sum as the court upon the final decision of the bill in equity may award; and so is the bond. And the inquiry is, whether this means such sum as may be awarded against the defendants or either of them, or that shall be awarded for the obligors in the bond to pay.

In settling the decree, the court seemed to assume that the former construction was the correct one. It is very obvious that the language of the order would admit of the construction which was put upon it; and, perhaps, that would best comport with the terms used, if strictly interpreted; but looking at all the circumstances of the case, we think the other is the true and just interpretation.

It is clear that the bill states no case for a decree against the corporation for the payment of money or the transfer of stock. *That* is conceded by the counsel on both sides; and so is the decree. It is equally clear that the plaintiff had established no lien upon any of the corporate property. Nor is any case stated that makes the corporation identical with Richardson, but only that he had acquired a major part of the shares and controlled the corporation. To be sure, the bill alleges that Richardson had acquired two hundred and sixty-two shares of the stock out of three hundred and twenty, the whole number; but this falls far short of making him substantially the owner of the whole corporate property. The proof makes the number of shares owned by him even less—only two hundred and thirty shares as the Master finds.

Viewing the case in this aspect, the terms of the order and bond

ought to be quite explicit to justify a construction that would charge the personal property of the corporation with the payment of the entire sums decreed to be paid by Richardson to the plaintiff. Instead of such explicit terms, the language here used may well be construed to mean the payment of such sums as the court should award for the obligors to pay; and this accords with the idea which generally governs the courts in such matters; namely, to make good the damages caused by the act in question.

Upon the case made in the bill, the court might decree a transfer by Richardson of the shares held in trust for the plaintiff, or might in case of his inability to make such transfer, decree the payment of their value by way of compensation. In either case, the plaintiff might be interested in protecting the shares from loss or depreciation. In case a transfer was decreed, the plaintiff would be interested to guard against any act that would impair the value of the stock; and such an effect might, in ordinary cases, naturally be apprehended from the removal of the machinery and stock and fixtures from the present location; involving, as it equally would, a depreciation in the value of the real estate used in the business.

Indeed, it would not be unreasonable to fear that the removal of the machinery and stock and other personal property from the state, and the consequent abandonment of the business here, might cause a disastrous depreciation of the stock, or even a total loss; and when it was made to appear that Richardson had a controlling interest in the corporation, it was but the exercise of a sound discretion to restrain him from causing the removal of the property without giving the plaintiff an indemnity for the loss it might occasion him. So, in case the decree was for the payment of the value of stock itself, then the removal of the personal property out of the state, and the transfer of the business to another jurisdiction, might, if Richardson had no other property in the state, seriously impair the plaintiff's means to enforce his decree. The restraint upon his removal of the property would be somewhat analogous to the writ of *ne exeat regno.*

Upon these views it becomes necessary to inquire what amount of damages was sustained by the plaintiff by the removal of this machinery and other personal property. Did it impair the value of the stock, and if so, to what extent? And to what extent did it injure the plaintiff? And in determining these questions, it is proper to consider whether the removal of the property depreciated the stock so as to prevent a decree for a transfer of the stock which might otherwise have been made, and whether the plaintiff was injured thereby. So in view of the decree to pay money was the plaintiff injured by having his means of enforcing the decree impaired, and if so, to what extent? The strongest objection arising from this construction of the order and bond, arises from the necessity of instituting an inquiry, which is collateral to the issues between the parties to the bill, and which gives other persons namely the sureties upon the bond an interest in that inquiry. However, by the express

terms of the order and bond, the amount to be paid by the obligors is to be fixed by the court in this suit, and probably can be in no other way, and we think that notwithstanding the inconvenience attending the determination of this collateral question, that the construction we give to the order and bond is the true one.

We think the Master, Mr. Conner, should be required to find and report the amount of damages caused to this plaintiff by the removal from the state of the personal property of the corporation.